J-A27041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 933 MDA 2022 |

Appeal from the Order Entered June 8, 2022
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s):  CP-21-DP-0000102-2020

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: FEBRUARY 7, 2023**

J.M. ("Mother") appeals from the June 8, 2022 order of the Court of Common Pleas of Cumberland County Juvenile Division ("trial court"), which granted the petition filed by Cumberland County Child and Youth Services (the "Agency") changing the placement goal for her son, Z.M. ("Child"), who was born in August 2020, from reunification to adoption.[1,2] After careful review, we dismiss this appeal as moot.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mother also appeals the orphans' court's decision to terminate her parental rights pursuant to the Adoption Act.  **See** 23 Pa. C.S. §§ 2511(a)(8) and (b). That appeal is separately listed before this panel.  **See** 942 MDA 2022.  We affirmed the decree terminating Mother's rights.

[2] The court also terminated the parental rights of the natural father, Z.H., and the legal father, M.M., each of whom met with an Agency caseworker while incarcerated at Cumberland County prison and executed a voluntary consent
*(Footnote Continued Next Page)*

The relevant factual and procedural history has been set forth in our memorandum in Mother's companion case involving the termination of her parental rights. Briefly, we note that Child was adjudicated dependent in October 2020. As set forth in the trial court's August 3, 2022 opinion[3] ("TCO"):

> [Child] was placed in the physical custody of the legal father, M.M., and under the protective supervision of the Agency by emergency protective order following reports raising concerns for [Mother's] mental health and parenting skills, namely [Mother's] comments on self-harm, burning herself with a cigarette while holding [Child], chasing the legal father of [Child] and others in the household, negligence in providing basic care for [Child] and refusal to engage in a safety plan.

TCO at 2-3.

The Agency removed Child from the custody of M.M., the legal father and placed Child in a foster home in May 2021 after Child sustained significant facial injuries consistent with non-accidental trauma while in M.M.'s care. The trial court noted that Mother continuously appeared to be focused on "drama" with M.M. rather than on Child during visits and family group conferences. *Id*. at 4. By November 2021, Mother was living with a new significant other, not working, and applying for disability; by January 2022, she was no longer living

_____

to adoption form. *See* N.T. at 19. Neither the natural father nor the legal father has appealed from the termination of his parental rights.

[3] The trial court issued an identical opinion, also dated August 3, 2022 at the orphan's court docket, 019-ADOPT-2022.

with that significant other and in March 2022, she obtained independent housing that was deemed inappropriate for Child. *Id*.

A goal change and termination of parental rights hearing was held on June 8, 2022, at which Agency caseworkers, a clinical mental health counselor who had begun treating Mother, Child's foster mother, and Mother herself testified. Ultimately, the trial court granted the petition to terminate Mother's parental rights filed by the Agency under 23 Pa.C.S. § 2511(a)(8) and (b). The court also changed the goal of the dependency proceedings from reunification to adoption.

Mother timely filed this appeal, and presents the following issues for our review:

> 1. Whether the [trial court] erred as a matter of law and abuse[d] its discretion when it found that [Child]'s permanency goal of reunification was neither appropriate no[r] feasible, and ordered a goal change to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6351(f).
>
> 2. Whether the [trial court] erred as a matter of law and abused its discretion in changing the goal from reunification to adoption when the conditions which led to removal or placement of [Child] no longer existed or were substantially eliminated, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6351(f).
>
> 3. Whether the [trial court] erred as a matter of law and abused its discretion determining the best interests of [Child] would be changing the goal to adoption when [Mother] had met or was meeting all her permanency goals, and was ready, willing, and able to parent [Child] and provide for his needs, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6351(f).

Mother's Brief at 4 (suggested responses omitted).

We review goal change orders pursuant to an abuse of discretion standard of review. *Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)). We must accept the court's findings of fact and credibility determinations if the record supports them, but we need not accept the court's inferences or conclusions of law. *Id*.

The Juvenile Act governs proceedings to change a child's permanent placement goal. 42 Pa.C.S. §§ 6301-6375. Dependency courts must apply the following analysis:

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the court is to consider, inter alia: (1) the continuing necessity for and appropriateness of the placement: (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interest of the parent, must guide the court. As this Court has held, the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-1089 (Pa. Super. 2011) (citations and quotation marks omitted).

In her first issue, Mother asserts that her progress demonstrated that reunification was a very feasible goal and one that could be accomplished in the near future. Given Mother's argument, and in light of our decision to affirm the termination decree in Mother's companion appeal, *see* 942 MDA

2022, we must find that her appeal is moot. *See D.R.−W.*, 227 A.3d at 917 (citing *In re DA.*, 801 A.2d 614, 616 (Pa. Super. 2002) (an issue is moot if in ruling upon the same issue the court cannot enter an order that has any legal force of effect). However, even if we reached the merits of this issue, we would conclude that the trial court properly assessed Mother's performance on her permanency plan goals, i.e., to establish stable housing and consistent employment and obtain mental health treatment and safe parenting skills, and determined, based on the evidence presented by the Agency at the hearing, that her very recent efforts to come into compliance were insufficient. *See* TCO at 5-8.

Mother's argument that the conditions which led to the removal of Child no longer exist is similarly moot, but even if it were not moot, we would conclude that it merits no relief. The trial court found, based on substantial evidence presented by the Agency, that these conditions, specifically inconsistent housing, mental health instability, inconsistent employment, and lack of safe parenting skills, continue to exist. TCO at 12. The trial court found significant that Mother's efforts toward meeting her most pressing goals only began after or just days prior to the filing of the petition to terminate her parental rights on March 23, 2022, stating:

> [Mother] has not had appropriate or stable housing until either March or April of 2022 or full-time employment until April 2022 although Child had been removed from her care for a year and a half at that time. [Mother] declined early attempts to get her into the recommended mental health treatment and only obtained regular mental health counseling in mid-March, a week before the

termination petition was filed, again a year and a half into the Child's removal from her care. We commend [Mother] for obtaining housing unlinked to her significant other, which has been a source of tumult and inconsistency for over the life of the case. However, we cannot ignore that long-term consistency in these goals has yet to be seen and the length of time it took [Mother] to make any true strides toward achieving them gives us extreme pause in yet considering her compliant.

---

The goal to maintain the parent-child bond and improve parenting skills, which by all accounts is linked to [Mother's] mental health, continues to give us concern and we did not find this condition remedied in any significant measure. Mother did not begin the Skills program until days prior to the termination and goal change hearing, as [Mother] had only recently obtained appropriate housing for [Child] and mental health treatment.

TCO at 12-13.

Finally, we find that Mother's assertion that she is ready, willing and able to parent Child and the goal change was in error, is moot, but even assuming it were not moot, it would lack merit. As noted by the trial court, projections for reunification, taking into account the period required for sustained consistency in her mental health treatment, housing and the completion of the parenting skills program she had only just begun, ranged from six to twelve months. Child has been in placement for significantly more than the statutorily mandated timeframe, and it is in Child's best interests for the goal of the dependency case to be changed to adoption. These findings of the trial court are also amply supported by the record.

In sum, even if we reached the merits of these issues, we would conclude that they are without merit. The court did not abuse its discretion when it changed the goal from reunification to adoption.

Appeal dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2023